Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Pamela E. Prescott, Esq. (SBN: 328243)
pamela@kazlg.com
**KAZEROUNI LAW GROUP, APC**
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Jason A. Ibey, Esq. (284607)
jason@kazlg.com
**KAZEROUNI LAW GROUP, APC**
321 N Mall Drive, Suite R108
St. George, Utah 84790
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
Ana Maria Vlad

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA MARIA VLAD, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> THE JOINT CORP. D/B/A THE JOINT CHIROPRACTIC MANAGEMENT COMPANY, <br><br> Defendant. | Case No.: 8:21-cv-00767 <br><br> **CLASS ACTION** <br><br> **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELEIF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ*.** <br><br> **JURY TRIAL DEMANDED** |

## INTRODUCTION

1. Plaintiff ANA MARIA VLAD ("Ms. Vlad," or "Plaintiff"), individually and on behalf of all others similarly situated, brings this action for damages and injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of defendant THE JOINT CORP. D/B/A THE JOINT CHIROPRACTIC MANAGEMENT COMPANY ("The Joint Corp." or "Defendant") in negligently, knowingly and/or willfully transmitting unsolicited, calls using an artificial or pre-recorded voice, to cellular telephones of consumers, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, ("TCPA"), thereby invading the privacy of Plaintiff and the putative class members.

2. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

3. Upon information and belief, Defendant placed automated calls using an artificial or pre-recorded voice to Plaintiff and others similarly situated without their prior express written consent in order to solicit business. This is exactly the type of telephonic contact the TCPA was designed to prevent.

4. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendants

## NATURE OF THE ACTION

5. In 1991, Congress passed the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, ("TCPA"), in response to complaints about certain telemarketing practices.

6. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not

universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id*. at § 12.

7. The Federal Trade Commission ("FCC") is charged with the authority to issue regulations implementing the TCPA. According to findings by the FCC, pre-recorded and artificial are prohibited under the TCPA because receiving them is a greater invasion of privacy and nuisance compared to live solicitation calls. The FCC has also acknowledged that wireless customers are charged for any incoming calls and text messages.

8. In 2015, the FCC noted, "[m]onth after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the Commission." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 1 (2015).

9. The transmission of an unsolicited calls and voice messages to a cellular device, using an artificial or pre-recorded voice, is distracting and aggravating to the recipient and intrudes upon the recipient's seclusion.

**JURISDICTION AND VENUE**

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case arises out of violation of federal law. 47 U.S.C § 227(b).

11. Because Defendant directs and conducts business within the State of

California and this judicial district, personal jurisdiction is established.

12. Personal jurisdiction and venue are proper in the Central District of California pursuant to 28 U.S.C. § 1391 for the following reasons: (1) Plaintiff resides within this judicial district; (2) the conduct complained of herein occurred within this judicial district; and (3) Defendant conducted business within this judicial district at all times relevant. Specifically, Defendant invaded Plaintiff's privacy by contacting Plaintiff on her cellular telephone, which occurred while Plaintiff was located in the County of Orange, State of California, which is within this judicial district.

## PARTIES

13. Plaintiff is an individual residing in the County of Orange, State of California, and is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

14. Upon information and belief, Plaintiff alleges that The Joint Corp. is a corporation whose state of incorporation is Delaware and principal place of business is in Arizona at 16767 N. Perimeter Dr., Suite 110, Scottsdale, Arizona, 85260.

15. Upon information and belief, The Joint Corp. is a corporation that offers chiropractic services and care across the nation with several locations throughout the U.S.

16. Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

17. Plaintiff alleges that at all times relevant herein, Defendant conducted business in the State of California, in the County of Orange, and within this judicial district. Defendant maintains offices throughout the County of Orange, including in Anaheim, Aliso Viejo, Brea, Costa Mesa, Huntington Beach, Irvine Orange, Santa Ana and other cities.

## FACTUAL ALLEGATIONS

18. Plaintiff is, and at all times mentioned herein was, the subscriber of the

- 3 -
CLASS ACTION COMPLAINT

cellular telephone number (714) ***-0131 (the "0131 Number"). The 0131 Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

19. The 714 area code serves customers in in the County of Orange and other neighboring cities.

20. On or around March 15, 2021, Plaintiff called Defendant from her cellular telephone ending in 0131 to inquire about Defendant's chiropractic services so that she could determine if she wanted to utilize said services.

21. Plaintiff called Defendant around lunch time that day and no one answered her call. Plaintiff did not leave a voicemail for Defendant, and simply hung up the phone.

22. Later that same day, at around 3:40 p.m., Plaintiff received a phone call and voicemail on her 0131 Number from Defendant from a (949) 518-1650 number.

23. The voicemail instructed Plaintiff to call a different number, (949) 421-5145, to get in touch with Defendant.

24. Plaintiff called back the (949) 421-5145 number provided in the voicemail and indicated to Defendant's sales representative that picked up the call that she was unsure if she wanted to utilize Defendant's services, and that she would have to "think about it." Plaintiff did not ask Defendant to contact her again, but rather indicated she would call back if she was interested.

25. At no point did Plaintiff provide Defendant with consent to be contacted on her cellphone, including by pre-recorded or artificial voice. Nor did Plaintiff sign up to receive Defendant's services.

26. On or around March 22, 2021, at 12:25 p.m., Plaintiff simultaneously received an automated text message and voicemail from Defendant's (949) 518-1650 number.

27. Both the text message and the voicemail were sent to Plaintiff to advertise Defendant's chiropractic services.

28. Specifically, upon information and belief, the voicemail Plaintiff received to her 0131 Number, was left using an artificial or pre-recorded voice.

29. Indeed, the voicemail that Plaintiff received from Defendant begins part way through of what appears to be a longer recording.

30. Plaintiff's voicemail only caught a portion of the artificial and/or pre-recorded voice message, which said "And then 30 minutes for the actual treatment please free to call or text us at this number for more information we look forward to serving you soon." This voicemail lasted eight seconds.

31. Upon information and belief, Plaintiff alleges that the equipment used to contact Plaintiff has the capacity to store telephone numbers using a random or sequential number generator, and to dial such telephone numbers from a list without human intervention, though use of a combination of hardware and sophisticated computer software to send the text messages and place the artificial or prerecorded calls. Thus, the equipment constitutes an "automatic telephone dialing system" ("ATDS") prohibited by 47 U.S.C. § 227(B)(1)(A).

32. Frustrated and annoyed the Defendant was calling and texting Plaintiff's cellular telephone, Plaintiff replied, "STOP" to the text message she received from Defendant.

33. Seconds later, Plaintiff received an automated response via text message from Defendant indicating that Plaintiff had "unsubscribed" and would not be contacted by Defendant further. Plaintiff, however, had never subscribed to receive text messages from Defendant.

34. Despite the request for telephonic contact to cease, Defendant continued to contact Plaintiff on her 0131 Number.

35. On March 29, 2021, Plaintiff received yet another call and voicemail to her 0131 Number from Defendant using what Plaintiff believes to be an artificial or pre-recorded voice.

36. This voicemail was identical to the one Plaintiff received on March 22,

2021.

37. Just like the other voicemail, the message started part way through what appears to be a longer pre-recorded message, and lasted just eight seconds.

38. Upon information and belief, Defendant utilizes Caller ID technology to capture the phone number of incoming cell phone calls in order to quickly transmit marketing calls using artificial or prerecorded voices to potential customers.

39. Only a few hours after Plaintiff called Defendant, she began receiving calls from Defendant to her 0131 Number.

40. Plaintiff is not a current customer of Defendant, nor has Plaintiff ever received a chiropractic session at one of Defendant's locations within the last four years.

41. Rather, Plaintiff went to one of Defendant's locations one time in 2016, but Plaintiff never provided Defendant with her telephone number. Plaintiff did not receive a phone call or text from Defendant until around March of 2021 when she called Defendant to inquire about its services.

42. On April 5, 2021, Defendant called Plaintiff yet again, this time Plaintiff answer and connected with a representative. Plaintiff told Defendant's representative that she would call Defendant if she was interested in its services and requested Defendant not to call her.

43. Because Plaintiff is alerted when a call or voicemail is received to Plaintiff's cellular device, the unsolicited calls and voicemails that Defendant transmitted to Plaintiff's cellular device, using an artificial or pre-recorded voice, invaded Plaintiff's privacy and distracted Plaintiff upon receipt

44. Upon information and belief, Defendant sent the aforementioned calls and voicemails to Plaintiff's cellular telephone using a telephone number that is leased by Defendant or Defendant's agent(s) or affiliate(s) and is used for operating Defendant's marketing campaign.

45. Upon information and belief, Defendant sent or transmitted, or had sent

or transmitted on its behalf, the same or substantially similar unsolicited, pre-recorded or artificial voicemails to thousands of customers' cellular telephones during the class period.

46. The calls and voicemails at issue sent by Defendant constituted an "advertisement" and/ or "telemarketing" as prohibited by the TCPA because Defendant placed the calls and left the voicemails on Plaintiff's cellular telephone in order to advertise its chiropractic services, and also for the purpose of advertising its business to Plaintiff in the future.

47. Defendant's telephonic communications to Plaintiff were not made for emergency purposes, as defined by 47 U.S.C. § 227(b)(1)(A)(iii).

48. Plaintiff never provided "prior express written consent' or any other form of consent to Defendant or any affiliate, subsidiary, or agent of Defendant to place calls to the 0131 Number using an "artificial or prerecorded voice" as prohibited by 47 U.S.C § 227(b)(1)(A).

49. Through Defendant's aforementioned conduct, Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA.

50. Plaintiff was personally affected by Defendant's aforementioned conduct because Plaintiff was frustrated that Defendant frequently annoyed Plaintiff with an uninvited marketing call without Plaintiff's prior express consent.

51. The calls and voicemails from Defendant, or its agent(s), violated 47 U.S.C. § 227(b)(1)(A)(iii).

**CLASS 4ACTION ALLEGATIONS**

52. Plaintiff brings this action on behalf of Plaintiff and all others similarly situated (the "Class").

53. Plaintiff represents, and is a member of, the Class, pursuant to Fed. R. Civ. P. 23(b)(2) and/or (b)(3), which is defined as follows:

> All persons within the United States who received any artificial or pre-recorded calls or voicemails from Defendant and/or its employees and/or agents to said person's cellular telephone, using the same equipment used to contact Plaintiff, within the four years prior to the filing of the Complaint.

54. Excluded from the Class are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein.

55. Plaintiff reserves the right to redefine the Class, and to add and redefine any additional subclass as appropriate based on discovery and specific theories of liability.

56. The Class that Plaintiff seeks to represent contains numerous members and is clearly ascertainable including, without limitation, by using Defendant's records to determine the size of the Class and to determine the identities of individual Class members.

**Numerosity**

57. The Class members are so numerous that joinder of all members would be unfeasible and impractical. The membership of the Class is currently unknown to Plaintiff at this time. However, given that, on information and belief, Defendant sent or transmitted, or had sent or transmitted on its behalf, unsolicited text messages, calls and/or voicemails to hundreds, if not thousands, of customers' cellular telephones nationwide during the proposed class period, it is reasonable to presume that the members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

//

**Commonality**

58. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. Those common questions of law and fact include, without limitation, the following:

a) Whether within the four years prior to the filing of this Complaint, Defendant or employees or agents transmitted any marketing calls without the prior express written consent of Plaintiff and Class members using an "artificial or prerecorded voice";

b) Whether within the four years prior to the filing of this Complaint, Defendant or employees or agents transmitted any marketing calls without the prior express written consent of Plaintiff and Class members using an ATDS;

c) Whether Defendant can meet its burden to show Defendant obtained prior express written consent (as defined by 47 C.F.R. 64.1200(f)(8)) to send the marketing calls complained of, assuming such an affirmative defense is raised;

d) Whether Defendant's conduct was knowing and/or willful;

e) Whether Plaintiff and the members of the Class were damaged thereby, and the extent of damages for such violation; and,

f) Whether Defendant or affiliates, subsidiaries, or agents of Defendant should be enjoined from engaging in such conduct in the future.

**Typicality**

59. Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class member with whom they are similarly situated, and Plaintiff's claims (or defenses, if any) are typical of all Class members' as demonstrated herein.

60. Plaintiff represents and is a Class member of the Class because Plaintiff received at least one marketing call through the use of an artificial or prerecorded voice, without providing prior express written consent to the Defendant within the

meaning of the TCPA. Consequently, the claims of Plaintiff are typical of the claims of Class members and Plaintiff's interests are consistent with and not antagonistic to those of the other Class members Plaintiff seeks to represent.

61. Plaintiff and all members of the Class have been impacted by, and face continuing harm arising out of, Defendant's violations or misconduct as alleged herein.

**Adequacy**

62. Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class member with whom Plaintiff is similarly situated, as demonstrated herein due to receipt of automated text messages and artificial or prerecorded calls without consent. Plaintiff acknowledges that Plaintiff has an obligation to make known to the Court any relationship, conflicts, or differences with any Class member. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. In addition, the proposed class counsel is experienced in handling claims involving consumer actions and violations of Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. Neither Plaintiff nor Plaintiff's counsel have any interests adverse to those of the other Class members.

**Predominance**

63. Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members of the class. The elements of the legal claims brought by Plaintiff and members of the Class are capable of proof at trial through evidence that is common to the class rather than individual to its members.

**Superiority**

64. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable and questions of law and fact common to the

Class predominate over any questions affecting only individual members of the Class. Even if every individual Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts if individual litigation of the numerous cases were to be required.

65. Individualized litigation also would present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, conducting this action as a class action will present fewer management difficulties, conserve the resources of the parties and the court system, and protect the rights of each Class member. Further, it will prevent the very real harm that would be suffered by numerous Class members who will be unable to enforce individual claims of this size on their own, and by Defendant's competitors, who will be placed at a competitive disadvantage because they chose to obey the law. Plaintiff anticipates no difficulty in the management of this case as a class action.

66. The prosecution of separate actions by individual Class members may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to those adjudications, or that would otherwise substantially impair or impede the ability of those non-party Class members to protect their interests.

67. The prosecution of individual actions by Class members would establish inconsistent standards of conduct for Defendant.

68. Defendant has acted or refused to act in ways generally applicable to the Class, thereby making appropriate final and injunctive relief or corresponding declaratory relief with regard to members of the Class as a whole. Likewise, Defendant's conduct as described above is unlawful, is capable of repetition, and will continue unless restrained and enjoined by the Court.

69. The Class may also be certified because:

(a) the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for Defendants;

(b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and,

(c) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

70. This suit seeks only damages and injunctive relief for recovery of statutory damages on behalf of Class and it expressly is not intended to request any recovery for personal injury and claims related thereto.

**FIRST CAUSE OF ACTION**
**NEGLIGENT VIOLATIONS OF THE TCPA**
**47 U.S.C. § 227 *ET SEQ*.**

71. Plaintiff repeats and incorporates by reference the allegations set forth above as though fully stated herein.

72. The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq*.

73. As a result of Defendant's negligent violations of 47 U.S.C. § 227, Plaintiff and all Class members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

74. As a result of Defendant's negligent violations of 47 U.S.C. § 227, Plaintiff and all Class members are also entitled to, and do seek, an award of $500.00

statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

### SECOND CAUSE OF ACTION
### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA
### 47 U.S.C. § 227 *ET SEQ.*

75. Plaintiff repeats and incorporates by reference the allegations set forth above as though fully stated herein.

76. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq*.

77. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227, *et seq*., Plaintiff and all Class members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

78. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227, *et seq*., Plaintiff and all Class members are also entitled to, and do seek, an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and members of the Class, prays for the following relief:

- That this action be certified as a Class Action, establishing the Class and any appropriate sub-classes that the Court may deem appropriate;
- Appointing Plaintiff as the representative of the Class;
- Appointing the law firms representing Plaintiff as Class Counsel;
- An award of $500.00 in statutory damages to Plaintiff and each Class member for each and every negligent violation of 47 U.S.C. § 227(b)(1) by Defendant, pursuant to 47 U.S.C. § 227(b)(3)(B);

- An award of $1,500.00 in statutory damages to Plaintiff and each Class member for each and every knowing and/or willful violation of 47 U.S.C. § 227(b)(1) by Defendant, pursuant to 47 U.S.C. § 227(b)(3)(B);
- Pre-judgment and post-judgment interest;
- An order providing injunctive relief prohibiting such conduct in the future, pursuant to 47 U.S.C. § 227(b)(3)(A);
- Costs of suit;
- An award of reasonable attorneys' fees and costs to Plaintiff and the Class, pursuant to the common fund doctrine and, *inter alia,* California Code of Civil Procedure § 1021.5;
- Any other further relief that the court may deem just and proper.

### JURY DEMAND

79.  Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Date: April 22, 2021

**KAZEROUNI LAW GROUP, APC**

By: *s/ Abbas Kazerounian*
　　Abbas Kazerounian, Esq.
　　*Attorneys for Plaintiff*